UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVETTA CHAMBERS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 1:19-CV-504-HAB |
| | ) |
| SUE PUFF, MARY BROWN, and | ) |
| PHOENIX INSTITUTE, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

The United States Supreme Court has directed courts to "think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretations that will have no effect on the outcome of the case." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotations and citation omitted). This Court will heed that direction here. Most of the briefing on Defendants' motion for summary judgment focuses on whether Defendants could commit a constitutional violation and whether Plaintiffs had a constitutional right that could be violated. The answers to these questions are irrelevant. Even if Plaintiffs had a constitutionally protected right, and even if Defendants could have and did violate that right, that right was not "clearly established." Plaintiffs, then, cannot prevail on their constitutional claims. The federal prong of this case will, then, end today.

**I.      Factual Background**

Defendant Phoenix Institute, Inc. ("Phoenix") was[1] a private, not-for-profit licensed child placing agency that contracted with the Indiana Department of Child Services ("DCS") to facilitate the placement of foster children with foster parents. Phoenix acted as DCS' eyes and ears on the

---
[1] Phoenix was voluntarily dissolved in August 2020.

ground: it oversaw the foster parents with whom it placed children, reported and made recommendations to DCS about the parents' compliance with DCS' rules and regulations, and acted on directives from DCS regarding the parents. Defendant Sue Puff ("Puff") was Phoenix's CEO and President. Defendant Mary Brown ("Brown") worked at Phoenix as a licensing specialist.

Plaintiffs are current or former foster parents. Each used Phoenix's licensing and placement services. The individual facts vary, but each Plaintiff had adverse action taken against their foster care license. The thrust of Plaintiffs' claims is that Phoenix and its employees, in concert with DCS, initiated the actions against Plaintiffs' licenses and impeded their ability to contest those actions. Some Plaintiffs had their licenses revoked, others voluntarily surrendered their licenses, while others maintain their licenses to this day.

## II.      Legal Analysis

### A.      *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide,

based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**B.**  ***Plaintiffs Have Failed to Identify a "Clearly Established" Right Allegedly Violated by Defendants***

Qualified immunity shields federal and state officials from money damages unless a plaintiff proves (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). District courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The "clearly established" prong is dispositive here. An individual's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs need not produce a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See ibid.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Defendants direct the Court to *Depuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005), asserting that it "clearly shows that Plaintiffs lack a constitutionally protected interest in their foster care licenses." (ECF No. 84 at 21). In *Depuy*, a group of childcare workers sued the Illinois Department of Children and Family Services ("DCFS") claiming that the department's procedures for investigating and disclosing allegations of child abuse deprived them of due process of law. As part of that litigation, the plaintiffs asserted "a protected liberty interest in pursuing a career in foster care and a property interest in the foster care benefits that DCFS pays foster homes on behalf of each child under their care." *Id*. at 513.

The Seventh Circuit held that neither interest existed. It first found that foster parenting is not a "career" such that it could form the basis for a protectable liberty interest. *Id*. at 513–15. The Seventh Circuit then found that, at least under Illinois law, foster parents did not have a "legitimate claim of entitlement" to foster care benefits. *Id*. at 515. Without that entitlement, no property interest was found.

Plaintiffs do not meaningfully respond to Defendants' assertion of qualified immunity nor try to distinguish *Depuy*. Plaintiffs only reference to qualified immunity in their response is the curious claim that Defendants "waived any assertion of qualified immunity when they initiated the removal [of Plaintiffs' complaint] from State to Federal Court." (ECF No. 87 at 2). The Court finds no support for this claim, and Plaintiffs point to none. Perhaps Plaintiffs are confusing Eleventh Amendment immunity with qualified immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002). Perhaps they are arguing for a new proposition of law. Whatever the case, Plaintiffs' meritless waiver claim is perfunctory and unsupported. Thus, the Court finds that Plaintiffs have waived any response to Defendants' assertion of qualified immunity. *See*, *e.g.*,

*Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (finding waiver where plaintiff did not address the "clearly established" prong of qualified immunity in the district court).

Waiver aside, the closest Plaintiffs come to arguing for a clearly established right is their claim that the "trier of fact" will agree that Plaintiffs had a constitutionally protected right. (ECF No. 87 at 19). What this argument ignores is the fact that qualified immunity is a question of law for the Court to decide; the existence of a clearly established right is not an issue for a jury. *Brown v. Knapp*, 156 F. Supp. 2d 732, 736 (N.D. Ill. 2001). The time for Plaintiffs to identify their clearly established right was in their summary judgment briefing. Having failed to do so, a jury will never hear their federal claims.

**C.      State Law Claims**

As the Court has noted, "the precise legal theory upon which Plaintiffs' proceed is difficult to discern." (ECF No. 56 at 2). The Court has concluded that Plaintiffs' failure to identify a clearly established federal statutory or constitutional right bars any federal claim. That said, the parties view Plaintiffs' complaint as alleging a state law claim of tortious interference with contract. This claim would be untouched by the assertion of qualified immunity.

Because today's order causes the dismissal of all claims over which the Court has original jurisdiction, *see* 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state law claims and rule on Defendants' motion for summary judgment. As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the

remaining pendant state claims"); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. Sometimes there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claim on summary judgment, it has not delved deeply into the state law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there clearly are times when "a district court should exercise supplemental jurisdiction over

pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. But "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. This is a close call. The Court believes that Plaintiffs' claims are likely without merit, but it ultimately concludes that it cannot say with certainty that they are frivolous. While Plaintiffs' state court claims arise out of the same facts as their now-defunct federal claims, they are still subject to distinct legal analysis. The Court may very well be delaying the inevitable but concludes that relinquishment of jurisdiction is appropriate.

In sum, the Court finds that none of the exceptions to the "usual practice" applies in this case. As a result, the Court denies Defendants' motion for summary judgment without prejudice as to any state law claims and dismisses those claims with leave to refile in state court.

**C.      Conclusion**

For these reasons, Defendants' Third Motion for Summary Judgment (ECF No. 83) is GRANTED in part and DENIED in part. The Motion is GRANTED as to all federal law claims asserted by Plaintiffs. The Motion is DENIED as to all state law claims asserted by Plaintiffs. Plaintiffs' state law claims are DISMISSED without prejudice to refiling in state court. The Clerk is DIRECTED to enter judgment accordingly.

SO ORDERED on September 8, 2021.

                                               s/ Holly A. Brady
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT